FILED
2012 Feb-10 PM 12:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF ALABAMA

## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **2:11-CR-299-AKK-HGD** |
| | ) | |
| ULUGBEK KODIROV | ) | |

## PLEA AGREEMENT

The United States of America and defendant, **ULUGBEK KODIROV** hereby acknowledge the following plea agreement in this case:

## PLEA

The defendant agrees to plead guilty to Counts One (1) and Five (5) of the Indictment filed in the above numbered and captioned matter and to the Information filed in the above named and captioned matter. In exchange, the United States Attorney, acting on behalf of the United States and through the undersigned Assistant United States Attorney, agrees dismiss Counts Two (2), Three (3), Four (4), Six (6), and Seven (7), and to recommend the disposition specified below.

## TERMS OF THE AGREEMENT

## I.    MAXIMUM PUNISHMENT:

The Parties understand that the maximum statutory punishment that may be imposed for the crime of Making a Threat to Kill the President of the United States, in violation of Title 18, United States Code, Section 871(a) as charged in Count One (1) is:

        a.    Imprisonment for not more than 5 years;

        b.    A fine of not more than $250,000, or,

        c.    Both (a and b);

        d.    Supervised release of not more than 3 years; and

        e.    Special Assessment Fee of $100.

The Parties understand that the maximum statutory punishment that may be imposed for the crime of Possession of a Firearm by an Alien Illegally and Unlawfully in the United States, in violation of Title 18, United States Code, Section 922(g)(5)(A) as charged in Count Five (5) is:

        a.    Imprisonment for not more than 10 years;

        b.    A fine of not more than $250,000, or,

        c.    Both (a and b);

        d.    Supervised release of not more than 3 years; and

e.    Special Assessment Fee of $100.

The Parties understand that the maximum statutory punishment that may be imposed for the crime of Providing Material Support to Terrorist, in violation of Title 18, United States Code, Section 2339(A)(a) as charged in the Information filed in this case:

a.    Imprisonment for not more than 15 years;

b.    A fine of not more than $250,000, or,

c.    Both (a and b);

d.    Supervised release of not more than 5 years; and

e.    Special Assessment Fee of $100.

## II.    **FACTUAL BASIS FOR PLEA:**

The United States would be prepared to prove the following facts at the trial of this case:

The defendant, ULUGBEK KODIROV, was born in Uzbekistan on August 7, 1989 and is a citizen of that country. KODIROV received a student VISA to enter the United States on May 21, 2009 at Tashkent, Uzbekistan. KODIROV entered the United States at New York, New York on June 19, 2009. On April 1, 2010, KODIROV's student VISA was revoked for failing to enroll in school. From that date forward, KODIROV was out of status and unlawfully within the United

States.

During early July, 2011, KODIROV began communicating with an individual he met on the internet ("Individual #1"). As the summer progressed, they began speaking to each other via telephone as well as communicating over the internet. KODIROV told Individual #1 that he was in communication with a person known to him as "the Emir". KODIROV explained that the Emir is a member of the Islamic Movement of Uzbekistan (IMU). The IMU has been designated by the U.S. State Department as a Foreign Terrorist Organization. KODIROV expressed his support of the Emir and the IMU to Individual #1.

On Saturday, July 9, 2011, KODIROV called Individual #1 and talked for about an hour. During that conversation, KODIROV asked Individual #1 how to kill the President of the United States, Barack H. Obama. KODIROV said that the Emir had asked KODIROV if there was anything KODIROV could do about President Obama since KODIROV was closer geographically to the President than the Emir. KODIROV told Individual #1 that he understood the Emir wanted KODIROV to kill President Obama. KODIROV discussed with Individual #1 possible ways to kill President Obama, including shooting the President from a long distance using a sniper rifle.

Page 4 of 23

On Sunday, July 10, 2011, KODIROV sent a YouTube message to Individual #1, which contained several links to web pages about long-range sniper rifles, including .50 caliber sniper rifles. Later that same day, KODIROV called Individual #1 and they talked for about an hour. During that conversation, KODIROV asked Individual #1 if he had seen the web links to the sniper rifles. KODIROV asked if it was possible to shoot President Obama from a long distance using these weapons. KODIROV became disheartened when he learned how expensive the sniper rifles were. They also talked about KODIROV not having the training necessary to make a long distance shot. KODIROV said that if using the sniper rifle was not an option, then KODIROV could shoot the President from a closer distance when the President was in public. KODIROV said that he did not care if he got shot and killed, so long as he killed President Obama. Late on the evening of Monday, July 11, 2011, Individual #1 called KODIROV and told him he wanted to come to Birmingham to meet him.

During the spring of 2011, KODIROV met a person ("Individual #2") in Birmingham who also spoke Uzbek. They began a friendship and often attended Mosque together. Individual #2 had been to KODIROV's residence and viewed jihadist websites and jihadist videos on KODIROV's laptop computer. KODIROV also told Individual #2 that he wanted to assist others in jihad overseas.

At about 5:30 p.m. on Monday, July 11, 2011, Individual #2 met KODIROV so they could go to the local Mosque for prayer. After prayer, Individual #2 spoke with KODIROV in the parking lot. KODIROV asked Individual #2 if he could obtain a gun for him. KODIROV said that he would take any gun, but he really wanted a sniper rifle. Individual #2 asked KODIROV why he wanted a rifle. KODIROV said that he wanted to kill President Obama. Individual #2 asked KODIROV if he was serious and KODIROV said that he (KODIROV) knew this was what he was supposed to do for Islam. KODIROV asked Individual #2 if he was willing to help him plan the operation to kill the President. KODIROV said he preferred to shoot the President from far away, but would shoot him from close range if he had to. KODIROV asked Individual #2 if he would help him obtain money and a fake ID to help with the plan.

Individual #1 called KODIROV and told him that he would come to Birmingham the next day. Late on the evening of the next day, July 12, 2011, Individual #1's flight arrived in Birmingham. After landing, Individual #1 called KODIROV and told him he had arrived and needed to be picked up at the airport. KODIROV and his roommate went to the airport and picked him up. They drove to KODIROV's residence where they spent the night. While at the residence, KODIROV told Individual #1 that he wanted to kill the President of the United

States. KODIROV said that he had been directed by the Emir to kill President Obama. KODIROV and Individual #1 discussed various methods of assassinating the President, including shooting the President from long range with a sniper rifle or shooting him from close range with a handgun. They discussed how the President would be campaigning in the coming weeks and months and would be more accessible. KODIROV discussed acquiring and using various types of weapons, including guns and explosives. KODIROV said that he was ready to die to carry out the plan to kill the President.

Individual #1 told KODIROV that he knew someone who might be able to help with the plan to kill the President. Individual #1 said he could arrange for KODIROV to meet the individual. KODIROV indicated that he would like to meet with this person, so Individual #1 made arrangements to meet with the individual later that day (July 13, 2011). KODIROV told Individual #1 that he had saved some money to buy a gun. KODIROV said that he was also selling his car to his roommate to raise money to buy a gun. KODIROV and Individual #1 discussed going to a local gun store to look at guns they might be able to use. KODIROV performed a Google search on his laptop computer for gun stores in the Birmingham area. They planned to visit several gun stores after their meeting. KODIROV left the Google search page for gun stores up on his laptop computer

while they went to the meeting.  The laptop computer was recovered later from KODIROV's car.

The meeting was held in the late afternoon of July 13, 2011, at the Hampton Inn in Leeds, Alabama.  At the meeting, Individual #1 introduced KODIROV to a person ("Individual #3") who was a  sympathizer with his plan.  During their meeting, KODIROV again expressed his desire to kill the President.  Individual #3 asked KODIROV if he was serious.  KODIROV explained that he was willing to die to carry out the plan.  KODIROV said that if he could not kill the President from long range he would get close to him and shoot him.  Individual #3 told KODIROV that he was pleased with him and he wanted to help KODIROV carry out his plan.  He said that had brought something to show KODIROV, if he believed KODIROV was serious about wanting to kill the President.  Individual #3 unwrapped a fully automatic Sendra Corporation Model M15A1 rifle and showed it KODIROV.  KODIROV became excited and held the M15A1 rifle.  Next, Individual #3 unwrapped a sniper type rifle with a telescopic sight and showed to KODIROV.  KODIROV held the sniper rifle and looked through the telescopic sight.  They discussed how to use each firearm,  how they might be used to kill the President, and the advantages and disadvantages of using each firearm.  Individual #3 told KODIROV that he had something else which KODIROV might want to

use. Individual #3 then brought out a small hard sided cooler which contained 4 disassembled hand grenades which he showed to KODIROV. Individual #3 demonstrated how to assemble and use the hand grenades. He then had KODIROV demonstrate to him that he (KODIROV) knew how to assemble the hand grenades.

Individual #3 asked KODIROV if he would like to use any of the items to carry out his plan to kill the President. KODIROV indicated that he wanted the fully automatic Sendra Corporation Model M15A1 rifle and the hand grenades. Individual #3 showed KODIROV how to load and use the M15A1 rifle including how to switch it from semi-automatic to fully automatic. KODIROV held the M15A1 rifle and demonstrated that he understood how to load and use it. They discussed obtaining ammunition for the rifle and getting together later in the week to train at a secluded location. Individual #3 explained to KODIROV that the M15A1 rifle was a fully automatic weapon and was illegal to possess in the United States. He cautioned him about not letting anyone see the weapon. They concealed the M15A1 rifle in a case and the hand grenades in a cooler. KODIROV and Individual #1 thanked Individual #3 who advised them to leave the building through a side door and not to go through the lobby. KODIROV, carrying the M15A1 rifle and the hand grenades, and Individual #1 left the room and walked

down the hall toward an exit.  Before they could leave the building, agents arrested

KODIROV and secured the M15A1 rifle and the hand grenades.

The fully automatic M15A1 rifle in this case was tested and found capable

of functioning as designed.  The rifle was manufactured outside the state of

Alabama and therefore affected commerce.

**The defendant hereby stipulates that the facts as stated above are**

**substantially correct.**

_____
                    **ULUGBEK KODIROV**

## III.   <u>RECOMMENDED SENTENCE:</u>

Pursuant to Rule 11(c)(1)(B), <u>Fed.R.Crim.P.</u>, the government will

recommend the following disposition:

(a)    That the defendant be awarded an appropriate reduction in offense level for acceptance of responsibility;

(b)    That following any term of imprisonment that the Court may impose, the defendant be placed on supervised release for a period to be determined by the Court, subject to the standard conditions of supervised release as set forth in USSG § 5D1.3, and any special conditions the Court deems appropriate;

(c)    That as a special condition of supervised release, the defendant agrees to be deported without delay to his home country of Uzbekistan; and

(d)    That the defendant pay a Special Assessment fee of $300, said amount due and owing as of the date sentence is pronounced.

## IV.    **COOPERATION BY DEFENDANT:**

The defendant agrees to waive the Fifth Amendment privilege against self-incrimination and to provide **TRUTHFUL AND COMPLETE INFORMATION** to the government concerning all aspects of the charged crimes, including, but not limited to, the defendant's role and participation in the offenses, as well as the roles and the participation of all other persons involved in these crimes of whom the

defendant has knowledge. The defendant agrees to testify against all of those individuals at any time requested by the government, including at any Grand Jury proceeding, forfeiture proceeding, bond hearing, pretrial hearing, trial, retrial, or post-trial hearing. **ALL SUCH INFORMATION AND TESTIMONY SHALL BE TRUTHFUL AND HONEST AND WITH NO KNOWING MATERIAL FALSE STATEMENTS OR OMISSIONS.**

Further, the defendant agrees to provide assistance and cooperation to the government as defined and directed by the Federal Bureau of Investigation or any other investigative agency or body as the United States Attorney for the Northern District of Alabama  may authorize, which cooperation may include the defendant's periodic submission to a polygraph examination to determine the truthfulness and accuracy of the defendant's statements and information.

## V.   MOTION PURSUANT TO USSG § 5K1.1 AND/OR 18 U.S.C. § 3553(e):

In the event the defendant provides assistance that rises to the level of "substantial assistance," as that term is used in USSG § 5K1.1, the government agrees to file a motion requesting a downward departure in the calculation of the defendant's advisory guideline sentence. Should any of the counts of conviction subject the defendant to a mandatory minimum sentence, the government may also

seek a sentence reduction below said mandatory minimum sentence, by including

in its motion a recommendation pursuant to the provisions of 18 U.S.C. § 3553(e).

The defendant agrees that the determination of whether defendant's conduct rises

to the level of "substantial assistance" and/or whether defendant's conduct merits

consideration under 18 U.S.C. § 3553(e) lies solely in the discretion of the United

States Attorney's Office.  Furthermore, the defendant agrees that the decision as to

the degree or extent of the downward departure requested, if any, also lies in the

sole discretion of the United States Attorney's Office.

Any  motion pursuant to 5k1.1 and/or 18 U.S.C. § 3553(e) will be filed

before the defendant's sentencing hearing and will outline all material assistance

which the defendant has provided. The defendant clearly understands and

acknowledges that because the defendant's plea is being offered in accordance with

Rule 11(c)(1)(B), Fed.R.Crim.P., the Court will not be bound by the government's

recommendation and may choose not to reduce the sentence at all.

## VI.   WAIVER OF RIGHT TO APPEAL AND POST-CONVICTION RELIEF:

In consideration of the recommended disposition of this case, I, ULUGBEK KODIROV, hereby waive and give up my right to appeal my conviction in this case, as well as any fines, restitution, and/or sentence the court might impose upon me. Further I waive and give up the right to challenge any conviction or sentence imposed or the manner in which the sentence was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255, subject to the following limitations:

The defendant reserves the right to contest in an appeal or post-conviction proceeding any or all of the following:

(a)    Any sentence imposed in excess of the applicable statutory maximum sentence; and

(b)    Any sentence that constitutes an upward departure from the advisory guideline sentencing range calculated by the court at the time sentence is imposed; and

(c)    Ineffective assistance of counsel.

The defendant acknowledges that before giving up these rights, he discussed the Federal Sentencing Guidelines and their application to his case with his attorney, who explained them to his satisfaction. The defendant further acknowledges and understands that the government retains its right to

appeal where authorized by statute.

I, ULUGBEK KODIROV , hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.

_____

**ULUGBEK KODIROV**

## VII.  STIPULATION TO JUDICIAL ORDER OF REMOVAL:

The defendant agrees to the entry of a stipulated judicial order of removal pursuant to Title 8, United States Code, Sections 1228(c)(5) and 1182. Specifically, the defendant admits that he is a native and citizen of Uzbekistan and that he is removable from the United States pursuant to Title 8, United States Code, Sections 1182(a)(3)(B)(i)(I), 1182(a)(2)(i)(I), and 1182(a)(2)(B).

### A.    Voluntary Waiver of Rights

After consultation with counsel and understanding the legal consequences of doing so, the defendant knowingly and voluntarily waives the right to notice and hearing provided for in Title 8, United States Code, Section 1228(c)(2) and further waives any and all rights to appeal, reopen, reconsider, or otherwise challenge this stipulated removal order.  The defendant understands and knowingly waives his

right to a hearing before an immigration judge or any other authority under the

Immigration and Nationality Act ("INA"), on the question of the defendant's

removability from the United States. The defendant further understands the rights

the defendant would possess in a contested administrative proceeding and waives

these rights, including the defendant's right to examine the evidence against him,

to present evidence on his behalf, and to cross-examine the witnesses presented by

the government.

The defendant agrees to waive his rights to any and all forms of relief or

protection from removal, deportation, or exclusion under the INA, as amended, and

related federal regulations. These rights include, but are not limited to, the ability

to apply for the following forms of relief or protection from removal: asylum;

withholding of removal under Title 8, United States Code, Section 1231(b((3); any

protection from removal pursuant to Article 3 of the United Nations Convention

Against Torture, including withholding or deferral of removal under 8 C.F.R. §

298: cancellation of removal; adjustment of status; registry; de novo review of a

denial or revocation of temporary protected status (current or future); waivers

under Title 8, United States Code, Sections 1182(h) or 1182(I); visa petitions;

consular processing; voluntary departure or any other possible relief or protection

from removal available under the Constitution, laws or treaty obligations of the

Page 16 of 23

United States. As part of this agreement, the defendant specifically acknowledges and states that the defendant has not been persecuted in, and has no present fear of persecution in, Uzbekistan on account of his race, religion, nationality, membership in a particular social group, or political opinion. Similarly, the defendant further acknowledges and states that the defendant has not been tortured in, and has no present fear of torture in Uzbekistan.

The defendant hereby requests that an order be issued by this Court for his removal to Uzbekistan. The defendant agrees to accept a written order of removal as a final disposition of these proceedings and waives any and all rights to challenge any provision of this agreement in any United States or foreign court or tribunal.

The defendant hereby agrees to make the judicial order of removal a public document, waiving his privacy rights, including his privacy rights under 8 C.F.R. 208.6. At the request of the U.S. Attorney's Office, U.S. Immigration and Customs Enforcement ("ICE") concurs with the government's request for a judicial order of removal. As a result of the above-referenced order, upon the completion of the defendant's criminal proceedings, including any sentence of incarceration and any court-imposed supervision, the defendant shall be removed to Uzbekistan.

**B.    Assistance in the Execution of Removal**

Page 17 of 23

The defendant agrees to assist ICE in the execution of his removal. Specifically, the defendant agrees to assist ICE in the procurement of any travel or other documents necessary for the defendant's removal; to meet with and to cooperate with representatives of the country or countries to which the defendant's removal is directed; and to execute those forms, applications, or waivers needed to execute or expedite the defendant's removal. The defendant further understands that his failure to refusal to assist ICE in the execution of his removal shall breach this plea agreement and may subject the defendant to criminal penalties under Title 8, United States Code, Section 1253.

### C.    Re-entry and Penalties

The defendant concedes that the entry of this judicial order of removal renders him permanently inadmissible to the United States. He agrees that he will not enter, attempt to enter, or transit through the United States without first seeking and obtaining permission to do so from the Secretary of the Department of Homeland Security or other designated representative of the U.S. government.

The Court's failure, for any reason, to enter the judicial order of removal, shall make the plea agreement, and the promises contained herein, null and void.

## VIII. UNITED STATES SENTENCING GUIDELINES:

Counsel has explained to the defendant, that in light of the United States

Supreme Court's recent decision in <u>United States v. Booker</u>, the federal sentencing guidelines are **advisory** in nature.  Sentencing is in the court's discretion and is no longer required to be within the guideline range.  The defendant agrees that, pursuant to this agreement, the court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range and defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

## IX.    AGREEMENT NOT BINDING ON COURT:

The Parties fully and completely understand and agree that it is the Court's duty to impose sentence upon the defendant and that any sentence recommended by the government is **NOT BINDING UPON THE COURT,** and that the Court need not accept the government's recommendation.  Further, the defendant understands that if the Court does not accept the government's recommendation, he does not have the right to withdraw his plea.

## X.    VOIDING OF AGREEMENT:

The defendant understands that should he (a) violate any federal, state, or local law after entering into this Plea Agreement, (b) move the Court to accept his plea of guilty in accordance with, or pursuant to, the provisions of <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970), or (c) tender a plea of *nolo contendere* to the charges, the agreement will become NULL and VOID, and the United States will

not be bound by any of the terms, conditions, or recommendations, express or

implied, which are contained therein.

## XI.    **OTHER DISTRICTS AND JURISDICTIONS:**

The parties understand and agree that this agreement **DOES NOT BIND**

any other United States Attorney in any other district, or any other state or local

authority.

## XII.    **TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS:**

Unless otherwise specified herein, the parties understand and acknowledge

that this agreement does not apply to or in any way limit any pending or

prospective proceedings related to defendant's **tax liabilities**, if any, or to any

pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

## XII.    **DEFENDANT'S UNDERSTANDING:**

I have read and understand the provisions of this agreement consisting of

*these 23*

twenty-~~four~~ (2̶4̶) pages.  I have discussed the case and my constitutional and other

rights with my lawyer.  I am satisfied with my lawyer's representation in this case.

I understand that by pleading guilty, I will be waiving and giving up my right to

continue to plead not guilty, to a trial by jury, to the assistance of counsel at that

trial, to confront, cross-examine, or compel the attendance of witnesses, to present

evidence in my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence.  I agree to enter my plea as indicated above on the terms and conditions set forth herein.

**NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated hereafter (if none, write "none"):

I understand that this Plea Agreement will take effect and will be binding as to the Parties **only after all necessary signatures have been affixed hereto**.

I have personally and voluntarily placed my initials on every page of this Agreement and have signed the signature line below to indicate I have read and approve all of the previous paragraphs of this Agreement, and understand all of the provisions of this Agreement, both individually and as a total binding agreement.

1/10/12
_____
DATE

_____
**ULUGBEK KODIROV**
Defendant

## XIII. <u>COUNSEL'S ACKNOWLEDGMENT</u>:

I have discussed this case with my client in detail and have advised of his

rights and all possible defenses. My client has conveyed to me that he understands

this Agreement and consents to all its terms. I believe the plea and disposition set

forth herein are appropriate under the facts of this case and are in accord with my

best judgment. I concur in the entry of the plea as indicated above and on the

terms and conditions set forth herein.

1/10/12
_____
DATE

_____
LANCE BELL
Defendant's Counsel

## XIV. <u>GOVERNMENT'S ACKNOWLEDGMENT</u>:

I have reviewed this matter and concur that the plea and disposition set

forth herein are appropriate and are in the interests of justice.

JOYCE WHITE VANCE
United States Attorney

2/8/2012
DATE

MICHAEL W. WHISONANT
Assistant United States Attorney

02/08/12
DATE

RYAN K. BUCHANAN
Assistant United States Attorney